Birdie McKEE, by her next friend, Laura B. Burton (Plaintiff), Appellant,

v.

TRAVELERS INSURANCE COMPANY, a corporation (Defendant), Respondent,

and

William Strickland (Defendant), Appellant.

Nos. 29756, 29757.

St. Louis Court of Appeals.

Missouri.

Sept. 2, 1958.

Henry Espy, S. R. Redmond, St. Louis, for plaintiff-appellant.

Rosenblum & Goldenhersh, St. Louis, for defendant-appellant.

Hocker, Goodwin & MacGreevy, John M. Goodwin, Wayne L. Millsap, St. Louis, Harold B. Bamburg, St. Louis, of counsel, for defendant-respondent.

DOERNER, Commissioner.

This is an action in equity as authorized by Section 379.200 RSMo 1949, V.A.M.S., in which the plaintiff, Birdie McKee, a minor, by her next friend, seeks to compel the defendant Travelers Insurance Company to pay and satisfy a judgment for $2,000 which she had obtained against the defendant Strickland on June 5, 1956, in the Circuit Court of the City of St. Louis.

The accident which gave rise to the suit resulting in the judgment against Strickland occurred on June 5, 1955, at or near the intersection of Kingshighway and Page Avenue in the City of St. Louis when a truck driven by the defendant Strickland and owned by the Kortkamp Bros. Moving and Storage Company, a corporation, struck and injured the plaintiff. In her action for damages the plaintiff named the Kortkamp Company and Strickland as defendants but the jury returned a verdict against Strickland alone, and in favor of the Kortkamp Company.

After her judgment against Strickland had become final plaintiff instituted this action in equity against Strickland and the Travelers Insurance Company, which had issued a policy of liability insurance indemnifying the named insured, Kortkamp Bros. Moving and Storage Company, against claims for bodily injuries arising out of accidents occurring in the operation of its trucks. There is no dispute that this policy was in full force and effect at the time of the accident in which plaintiff was injured, and that the coverage extended to the particular truck involved in the accident. The basic question is whether, under the terms of the policy, coverage extended to Strickland so that the Insurance Company became obligated to pay the judgment plaintiff had obtained against him. On his part, Strickland filed a cross-claim against the defendant Travelers in which he sought recompense for the counsel fees and other expenses for which he had become obligated in defending against this suit. Judgment below was in favor of defendant Travelers Insurance Company on both the plaintiff's claim and defendant Strickland's cross-claim, and both plaintiff and defendant Strickland have appealed.

Strickland, for about six years preceding the accident, had been employed by the

Kortkamp Company as a truck driver, helper, warehouseman, office boy, and general handyman, but at the time of the accident, which occurred about 11:20 p. m. on a Sunday evening, he was returning to his home from his father's house. The evidence showed that sometime earlier that night Strickland's father, who was paralyzed, had fallen out of bed, that his sister had telephoned him, and that he had gone to his father's house to help his sister put their father back in bed.

As part of his duties Strickland was required to report at the Kortkamp Company's place of business about a half hour before the other employees arrived in order to open it up. According to Oliver N. Kortkamp, President of the company, he permitted Strickland to use the truck to go back and forth from his home to the company's offices for a number of reasons—because Strickland was required to get to the office early to open up; because it was inconvenient for Strickland to get to public transportation near his home; because Strickland was in the habit of getting in late and the use of the truck gave him more time; and to save Strickland the cost of a streetcar pass. The witness testified categorically that at the time he informed Strickland he could use the truck to go back and forth from his home he told Strickland that the latter was not to use the truck for any purpose of his own; that from time to time he checked up on Strickland by driving past the latter's home in the evening to see whether the truck was there, and that on each occasion it was parked there; and that he never knew of Strickland to use the truck for his own purpose.

Essentially, Strickland's testimony regarding the authority given him to use the truck did not vary substantially from that given by Kortkamp. He testified that he was permitted to take the truck and keep it over night at his house because he opened up the place of business in the morning, because he lived in an out-of-the-way place, and so that he wouldn't have to buy a streetcar pass; and he admitted that Kort-kamp told him he didn't want him to do any jobs or "pleasure-riding" with it, which Strickland, who had not gone beyond the eighth grade, understood to mean getting drunk, riding women around, or doing a job for himself.

As stated, the named insured in the policy involved in this case was Kortkamp Bros. Moving and Storage Company. By its terms the policy provided that:

> "The unqualified word 'insured' includes the named insured and also includes, under divisions 1 and 2 of the Definition of Hazards, any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and under division 3 of the Definition of Hazards, any executive officer of the named insured."

This provision in automobile indemnity policies is commonly referred to as the "omnibus" clause.

In developing the extent of Strickland's use of the truck in question testimony was given by both Strickland and Kortkamp that on week-ends during certain months of the year, at Kortkamp's request, Strickland would go to Kortkamp's home, located on Highway 66 in St. Louis County, to plow and do other odd jobs. On each of such occasions Strickland used the truck to go to and fro, with Kortkamp's knowledge but without any express authority having been given him to do so. An effort was also made by appellants to show that Strickland occasionally used the truck to go to the grocery store and barber shop, but in our opinion the evidence also showed that neither Kortkamp nor anyone else in authority at the Kortkamp Company had either authorized or had any knowledge of such a practice, except possibly as to one instance when Strickland had stopped at a grocery store on his way home from work and the truck was sideswiped by a passing

car. Although Strickland's testimony as to Kortkamp's reaction to this occurrence is not as clear as might be desired, enough appears in the record to indicate that when Kortkamp learned of that accident he instructed Strickland not to use the truck for such purposes or take such chances of being hit.

While it is true, as said in Varble v. Stanley, Mo.App., 306 S.W.2d 662, that the permission provided in the omnibus clause can be either express or implied from the conduct of those in a position to give it, the evidence in this case, in our opinion, falls far short of showing any knowledge—much less any acquiescence—on the part of Kortkamp or his company as to the use of the truck by Strickland for his own personal pleasure or purposes. And without knowledge by Kortkamp or his company that Strickland was using the truck for his own purposes, no permission could be implied. Varble v. Stanley, supra.

But appellants' principal contention is not based on the issue of Strickland's implied permission to use the truck for his own purposes by reason of the Kortkamp Company's knowledge of and acquiescence in such use. Their primary contention is that since Strickland was initially given permission by the named insured, the Kortkamp Company, to use the truck to go to and from work, any subsequent use of the automobile by Strickland, for whatever purpose, should be deemed to be with the named insured's permission, in order to permit a recovery under the omnibus clause.

The parties are in agreement that no Missouri case precisely in point on the facts has been decided by an appellate court of this state, and in their excellent briefs, which have been of great aid to the court, both quote liberally from an exhaustive article on the subject in 5 A.L.R.2d 600, and from cases cited therein. As developed in that article, the decisions disclose three lines of authority dealing with the construction of the word "permission" in an omibus

clause as applied to an employee-driver of an automobile. The first view, claimed by appellants to have been adopted by a majority of jurisdictions, is the so-called initial permission or liberal rule under which the employee need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is said to have been with the permission of the named insured, though the particular use at the time of the accident may not have been within the contemplation of the named insured when he parted with the possession of the vehicle. See Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368; Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500; Drewek v. Milwaukee Automobile Insurance Co., 207 Wis. 445, 240 N.W. 881; Konrad v. Hartford Accident & Indemity Co., 11 Ill.App.2d 503, 137 N.E.2d 855.

Under the second rule, known as the strict or conversion rule, for the use of the vehicle to be within the omnibus clause the permission given to the employee must extend, not only to the initial use of the vehicle, but also to the particular use being made of the car at the time of the accident. Johnson v. American Automobile Ins. Co., 131 Me. 288, 161 A. 496; Gray v. Sawatzki, 291 Mich. 491, 289 N.W. 227; Travelers Ins. Co. v. Marcoux, 91 N.H. 450, 21 A.2d 161.

The third and final rule is called the moderate or minor deviation rule. Under this rule a minor deviation from the purpose for which the employer granted the employee permission to use the vehicle will not be sufficient to exclude the employee from coverage under the omnibus clause, while a material deviation is held to constitute a use of the automobile without the employer's permission. Kazdan v. Stein, 26 Ohio App. 455, 160 N.E. 506, affirmed 118 Ohio St. 217, 160 N.E. 704; Hodges v. Ocean Accident & Guarantee Corp., 66 Ga. App. 431, 18 S.E.2d 28, certiorari denied 316 U.S. 693, 62 S.Ct. 1299, 86 L.Ed. 1763,

rehearing denied 317 U.S. 705, 63 S.Ct. 25, 87 L.Ed. 563; United States Fidelity & Guaranty Co. v. Hall, 237 Ky. 393, 35 S.W. 2d 550; Brower v. Employers' Liability Assurance Co., 318 Pa. 440, 177 A. 826.

These rules, and the decisions under them, deal primarily with factual situations in which the employee deviated from the purpose for which his employer granted him permission to use the automobile. But in at least one jurisdiction the so-called liberal rule has been stretched and extended so that it has been held to supply coverage to an employee even though he uses the car in direct violation of an express prohibition of his employer. Thus, in Konrad v. Hartford Accident & Indemnity Co., 11 Ill.App.2d 503, 137 N.E.2d 855, upon which the appellants chiefly rely, the facts as stated by that court showed that Jones, the employee, a driver-salesman, was told that while he could take his truck to his home at the end of the day's work "he was specifically informed that under no circumstances was the truck to be used for any purpose except business." loc. cit. 857. Contrary to such orders, just before midnight and long after his day's work had been completed, Jones took two acquaintances on a ride to show them how fast the truck would go, and a collision occurred. In holding that the initial permission rule applied and that the employee was covered under the omnibus clause, the Illinois Appellate Court, with reference to the express prohibition given Jones against use of the truck for any purpose except business, said (loc. cit. 865):

"An employer cannot, so far as the particular matter here is concerned, effectively prohibit such personal use when he at the same time by his every act places it entirely in the control of the employee so [as] to engage in such personal use. Prohibition under these circumstances is but an empty word and does not jibe with the employer's actual acts in vesting the user with every indicia of permission. The fox cannot be set to watch the hen house.

Such is not realistic. 'Permission' to use this truck was either granted or not granted to the user Jones. It could not practicably be granted in one breath or with one hand, as it unquestionably was, and yet not granted in the next breath or with the other hand, as the defendant urges."

Whatever may be the rule in Illinois, such a view is not the law in the majority of states, including those which have adopted the initial permission rule. It is said in the article in 5 A.L.R.2d loc. cit. 626, that:

"When it comes to deviations in violation of an express prohibition of the employer, practically all the courts are in agreement that the use of the automobile by the employee for personal purposes or by a third person with the employee's consent is not a permissible use within the meaning of the omnibus clause."

And further (loc. cit. 651):

"Where the employer has expressly forbidden his employee to use the employer's automobile for his own personal purposes, such use of the automobile by the employee in violation of orders is not deemed to be one with the permission of the employer within the meaning of the omnibus clause of the liability insurance policy."

In an equally exhaustive article on the subject in 7 Insurance Law and Practice, Section 4351 et seq., Appleman, the author of the work, states:

"It has usually been held that if the use which is made of the truck at the time of the accident is one which was expressly forbidden by the owner that the policy does not cover the operator by virtue of an omnibus clause." Loc. cit. § 4370, p. 182.

While not precisely in point on all of the facts, there is language in Rainwater v. Wallace, Mo.App., 169 S.W.2d 450, affirmed

351 Mo. 1044, 174 S.W.2d 835, indicating that our courts may lean to the minor deviation rule as regards the interpretation of the omnibus clause, for it was there said (169 S.W.2d loc. cit. 456):

"It is the well established rule in this state, that a servant does not step without the scope of his employment, as a matter of law, by joining some private business of his own with that of his master's, except where he makes a marked deviation from his master's business."

But whichever of the three rules may be ultimately adopted in a case where the issue is that of deviation from the master's business, it is our opinion, and we so hold, that when an employee uses his employer's automobile for his own purposes, contrary to and in direct violation of the employer's specific orders, as Strickland did in this case, the employee does not have his employer's permission to use the vehicle within the meaning of the omnibus clause, and that such an employee is therefore not an additional insured under the terms of his employer's automobile indemnity policy.

Appellants' next point is that any ambiguity in the insurance contract must be construed most strongly against the respondent, which prepared it. We agree that such is the rule, but do not believe it is applicable here. There is no ambiguity in the word "permission." Webster defines "permission" as the "Act of permitting; formal consent; authorization; leave; license or liberty granted." "Permission" or "to permit" implies knowledge and consent. 70 C.J.S. Permission p. 564; Sanders v. City of Carthage, 330 Mo. 844, 51 S.W.2d 529, 532; Hill v. Montgomery, 352 Mo. 147, 176 S.W.2d 284, 287. It is said that the word as used in the omnibus clause may have a flexible meaning. Allstate Insurance Co. v. Hartford Accident & Indemnity Co., Mo.App., 311 S.W.2d 41. But it was recognized in that case that: "Under the definitions ordinarily given, it carries with it the necessary aspect of the right, power, or privilege to give or to withhold the grant of license embodied in the term." Loc. cit. 45. To hold, as we are asked to do, that the Kortkamp Company could authorize or grant leave to Strickland to use its truck in going to his home at night and back to work in the morning, but that it could not limit his use to such purposes by expressly forbidding him from using it for his own pursuits, would be an anomalous distortion of the word "permission." If one may grant another the right to use his automobile or to deny such use entirely, surely he has the right to impose restrictions or conditions upon its use and the authority to limit the extent or purpose for which it may be used.

Appellants' third point is that since the respondent undertook the defense of Strickland in the original suit for damages, with knowledge of facts sufficient to have been advised that Strickland was not an additional insured under the omnibus clause, it thereby waived any right it might have had to claim that Strickland was not covered under its policy of insurance.

In the light we take of this argument it is not necessary to set forth all of the facts and circumstances which appellants claim constitute the waiver and estoppel. It is sufficient to say that, as we read the record, the evidence fails to substantiate appellants' claim that respondent initially undertook the defense of the suit against Strickland knowing that he did not have Kortkamp's permission to drive the truck at the time the accident occurred. Nor does it bear out the contention that after respondent became aware that Strickland had been forbidden to use the truck for his own purposes it continued to represent him for any undue length of time. To the contrary, it shows that upon receiving a written statement from Kortkamp that Strickland at the time of the accident was using the truck contrary to Kortkamp's instructions it promptly advised Strickland by letter that he had no coverage under the

policy, and its attorneys withdrew as his counsel.

■ But even if the respondent had undertaken Strickland's defense with knowledge that he was operating the truck without permission at the time of the accident, appellants would not thereby become entitled to relief against respondent. Appellants' only citation in support of their contention is that of Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo.App. 327, 133 S.W. 664, which involved the insured named in a policy. Strickland was neither the named insured in this policy nor was he, as we have found, an additional insured within the terms of the omnibus clause since he was not using the truck with the permission of the named insured at the time the accident occurred. Hence Strickland's liability was never covered by the policy, and neither waiver nor estoppel would operate to create, in effect, a non-existent policy. Mistele v. Ogle, Mo.Sup., 293 S.W.2d 330; Linenschmidt v. Continental Casualty Co., 356 Mo. 914, 204 S.W.2d 295. In the latter case, the Supreme Court said (loc. cit. 302):

> "The terms waiver and estoppel frequently have been used interchangeably in insurance law. An insurer may waive a defense by his conduct and become estopped to thereafter assert it. Waiver and estoppel operate, when applicable, to preserve rights already acquired, the prevention of forfeitures or avoidance of duties, and not to create new rights, new causes of action. Plaintiff's cases involved the named insured or parties authorized in law to enforce his rights under the policy against the insurer. But Hofmann, the judgment debtor here, was not personally entitled to the protection of the instant insurance contract and plaintiff may not thus create a new contract of liability against the insurer. Berry v. Massachusetts Bonding & Ins. Co., 203 Mo.App. 459, 467, 221 S.W. 748, 751; McLain v. Mercantile

Trust Co., 292 Mo. 114, 122, 237 S.W. 506, 508; Mitchell v. American Mut. Ass'n, 226 Mo.App. 696, 704, 46 S.W. 2d 231, 236(2); Shepard v. Metropolitan Life Ins. Co., 231 Mo.App. 148, 99 S.W.2d 144, 145; Rosenberg v. General Accident Fire & Life Assur. Co., Mo.App., 246 S.W. 1009, 1012; C. E. Carnes & Co. v. Employers' Liability Assur. Corp., 5 Cir., 101 F.2d 739, 742(11); Macomber v. Minneapolis Fire & Marine Ins. Co., 187 Wis. 432, 204 N.W. 331, 332(3)."

■ The fourth and last point, urged alone by appellant Strickland, is that an insurer who repudiates its indemnity contract and refuses to defend or withdraws from the defense of the insured, does so at its own risk; and if it is subsequently determined that the risk is a covered one, the insured is entitled to recover the attorney's fee and other expenses he incurred in the defense of the risk covered under the policy. In point of fact, Strickland did not employ his own counsel in the principal case after the attorneys supplied by the respondent withdrew as his counsel, and the services for which he claims reimbursement were actually rendered in the present proceedings. But the rule contended for, if it be the law, is obviously predicated on the subsequent determination that the claimant was in fact an insured and therefore entitled to coverage under the policy, an issue which we have found to the contrary.

For the reasons given, the Commissioner recommends that the judgment should be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

The judgment of the Circuit Court of the City of St. Louis is accordingly affirmed.

RUDDY, P. J., ANDERSON, J., and JAMES D. CLEMENS, Special Judge, concur