## THE LEONIE O. LOUISE.

(Circuit Court of Appeals, Fifth Circuit. February 19, 1925.)

No. 4471.

1. **Salvage** ⬤⇒9—**Services rendered in pumping out and floating a stranded schooner held "salvage services."**

Services rendered in pumping out a schooner, pulling her off a bank, where she had been stranded during a storm, and safely anchoring her, *held* "salvage services."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Salvage Service.]

2. **Salvage** ⬤⇒39—**Contract held not to deprive salvor of lien on vessel.**

That a contract for salvage services was made with the insurer of the vessel, payment to be made only on their success, did not deprive the salvor of his right to a lien on the vessel to the amount of the contract price.

3. **Interest** ⬤⇒28—**Interest is recoverable on salvage award at the legal rate in the state.**

Interest is recoverable on the amount recovered on a contract for salvage at the legal rate in the state where the contract was made and the services rendered.

Appeal from the District Court of the United States for the Southern District of Florida; Lake Jones, Judge.

Suit in admiralty by R. W. Thomas against the schooner Leonie O. Louise; R. B. Kirkconnell, claimant. Decree dismissing libel, and libelant appeals. Reversed, with instructions.

See, also, 292 F. 763.

Martin Caraballo, of Tampa, Fla., and E. J. L'Engle and Walter F. Rogers, both of Jacksonville, Fla., for appellant.

G. E. Mabry, D. E. Carlton, and O. K. Reaves, all of Tampa, Fla., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. There is no dispute about the material facts in this case. In October, 1921, the schooner, Leonie O.

Louise, of about 230 tons, and of which R. B. Kirkconnell was owner and master, was driven from her anchorage by a storm of unusual violence and went aground on the bank of the Hillsboro river, at Tampa, Fla. She was lying head on to the bank with four other vessels in close proximity, two on each side, with about five feet of water under her stern at low tide. There was not sufficient rise of the tide to float her. She was valued at $20,000 for the purpose of insurance, and a policy of $15,000 had been issued by the La Croix Insurance Company, Limited, of Canada; the policy making the owner coinsurer for one-quarter.

A contract was entered into between the insurance company and R. W. Thomas and H. C. Edwards to pump the water out of the hull of the said vessel, pull her off the bank, and cause her to be safely anchored in deep water in the Hillsboro river. The compensation stipulated was $1,800. The contract provided that Thomas and Edwards should be responsible for any damage suffered by the hull of the vessel, from the time the contract was signed until its completion, caused by any negligence of theirs, and that, further, no payment should be made until the completion of the work. The parties construed this agreement as a "no cure, no pay," contract. The work was done within the time stipulated, 15 days from the date of its signing, and the vessel was safely anchored according to agreement. Kirkconnell was cognizant of the making of the contract, offered no objection, was present every day while the work was going on, and paid $450 to Thomas and Edwards, his pro rata of the contract price as a coinsurer. Subsequently Edwards assigned his interest in the contract to Thomas. The insurance company did not pay, for some reason not clearly disclosed by the record.

Thomas thereupon filed a libel against the vessel, and she was seized under admiralty process. She was claimed by her owner and released on bond. Exceptions to the libel were overruled. Thereafter testimony was taken before a commissioner, and in due course the case was heard on the merits. The libel was dismissed on the theory that the services rendered were not salvage services, and that the contract made with the insurance company was not such as would create a lien on the ship. From the judgment dismissing the libel, this appeal is prosecuted.

[1] The Leonie Louise was stranded on the beach and was at the mercy of the elements. The fact that she had been driven up on the bank by the action of the wind and waves proves conclusively the possibility of further damage from the same sources. Although the danger was not imminent, it was reasonably to be apprehended, and there was pressing necessity for prompt action to return the schooner to the water. She was out of commerce and useless in her then situation—to all intents and purposes a total loss as a vessel unless floated. There can be no doubt that the services were salvage services. The Gulfport, 250 F. 577, 162 C. C. A. 593; Potter v. Payne, 269 F. 470; The Kennebec, 231 F. 423, 145 C. C. A. 417.

[2] That the contract for salvage was made with the insurance company is immaterial. The salvors had a lien on the vessel under the admiralty law, regardless of contract. Admiralty rule 18; The Comanche, 8 Wall. 448, 19 L. Ed. 397.

[3] The appellant and his partner performed meritorious services in floating the vessel at an expense almost equal to the amount of the contract. They employed an equipment, consisting of dredges and pile drivers, with the necessary cables and chains and other appurtenances, valued by them at $30,000; but the recovery must be limited to the amount of the contract. Appellant is entitled to recover the amount stipulated in the contract, less what has been paid on account, with interest at 8 per cent. per annum, the legal rate in Florida, where the contract was made, and costs. The Elvaston (C. C. A.) 279 F. 935.

The decree dismissing the libel is reversed, with instructions to enter a decree for libelant in accordance with this opinion.

Reversed.