FARMERS MUTUAL AUTOMOBILE IN-
SURANCE COMPANY, a Corpora-
tion, Plaintiff,

v.

Billy NOEL, E. Rock Louden, Adminis-
trator of the Estate of Louis Marian
Morris, Otto J. Moser, Rex Allen Young,
Allen Young, and Geraldine Young, Nor-
man Crouse, Ronald Crouse, Norman
Crouse, Sr., and Edna Crouse, Carolyn
Martin, Viola Martin, Mary Ann Ram-
sey, William Ramsey and Doris Ram-
sey, Peggy Kreek, John Kreek and
Sadie Kreek, and Kenneth Kelly, De-
fendants.

No. 1093.

United States District Court
W. D. Missouri,
St. Joseph Division.
Aug. 9, 1962.

Ewing & Beavers, Maryville, Mo.,
Popham, Thompson, Popham, Trusty &
Conway, Kansas City, Mo., for plaintiff.

Pettijohn & Eiser, Oregon, Mo., for
defendant Noel.

Gene Thompson, Maryville, Mo., for
defendants Crouse.

Shoemaker & Reital, St. Joseph, Mo.,
for defendants Young.

Dale, Potter & Flynn, St. Joseph, Mo., for defendants Ramsey.

Waldo P. Goff and Merrill M. Steeb, St. Joseph, Mo., for defendant Moser.

Louis V. Stigall, St. Joseph, Mo., guardian ad Litem for minor defendants.

DUNCAN, District Judge.

Plaintiff, a resident and citizen of the State of Wisconsin, instituted this suit against the defendants, all residents of the State of Missouri, under the provisions of § 2201 Title 28 U.S.C.A. to determine its liability under a policy of liability insurance written by it, insuring the defendant Billy Noel, against loss or damage growing out of the use of certain motor vehicles.

The policy was in full force and effect at all times material to the issues in this case, and provided among other things:

"Coverages A and B—Bodily Injury and Property Damage Liability.

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"Coverage A—Bodily injury, sickness or disease,

including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile;

"Coverage B—Injury to or destruction of property,

including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile."

"Insured" is defined under the policy as:

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, *provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.*" [Emphasis supplied.]

There is no dispute as to any substantial fact in this case, with the possible exception of the identity of the person who was driving the car at the time of the happening of the event out of which this litigation arose.

Defendant, Billy Noel, was a farmer living several miles from Mound City, Missouri. One Louis Marian Morris, who lived about one and one-half miles from Noel, was employed by the defendant Noel as a farmhand.

Noel was the owner of a 1950 Oldsmobile upon which the policy of insurance was issued. On Monday morning, October 10, 1960, Noel gave defendant Morris the automobile in question and told him that "he could take the car and drive it to and from work and that was all". On Thursday following, the weather was unsuitable for work and Noel told Morris to return to his home and he would call him when it would be possible to work.

The weather continued to be inclement Friday and Morris did not receive a call from Noel. There is no evidence that Noel renewed his restriction that Morris was to "drive the car to and from work and that was all".

The evidence revealed that sometime between Monday and Friday, Noel directed Morris to drive the car into Oregon, Missouri, so that Noel might use it to go to a sale. On this occasion, Morris returned home in a truck which had been driven into Oregon by Noel. With the exception of driving the car "to and from work", there is no suggestion or claim that Morris had ever driven the car on any other occasion.

Defendants raise the contention that these instructions were given to Morris but once, that is, on Monday morning, and that on Thursday morning, the last

day he worked, he was told to go home and await a call from his employer. The instructions were not renewed. Thus they were not applicable. I am not able to agree with the defendants in this contention. Certainly there is no reason why the admonition should have been repeated every time the employee took the car. Especially as there was no suggestion of any kind or character that the driver was to use the car for any other purpose. In fact, considering all the inferences, it would be to the contrary.

On Friday, October 14, 1960, Morris drove the automobile into Oregon, Missouri, where he apparently indulged in some drinking. He thereafter came into association with the defendants Moser and Kelly.

At approximately 10:30 that evening, while the Noel car was being operated on a country road several miles from Oregon, and in an opposite direction from either the home of Noel or Morris, it came into collision with an automobile owned by the defendant Geraldine Young and being operated by defendant Rex Allen Young. The collision resulted in the death of Morris, and in injury to the occupants of the other car, all of whom are defendants in this case. No actions for damages have been brought by any of the parties.

All of the parties made, or threatened to make claim against the defendants Noel, Moser and Morris. The plaintiff denied liability both to its insured Noel and to Morris and Moser, and instituted this suit, on the ground that the motor vehicle was not being operated at the time of the collision with the permission of the named insured or of his spouse, and therefore, was not covered under the provisions of the policy.

It is the contention of the defendants Moser and Morris' administrator, that it is the duty of plaintiff, under the terms of the policy, to defend them against any action that might be brought against them by any of the other defendants, and to pay any judgment that might be rendered against them. They contend that under the law of Missouri, the operator of the vehicle had the permission of the named insured.

Under the omnibus clause in cases dealing with employer-employee relationship, three different rules have emerged. These views were stated in the case of McKee v. Travelers Ins. Co., Mo.App., 315 S.W.2d 852, 855:

"The first view, claimed by appellants to have been adopted by a majority of jurisdictions, is the so-called initial permission or liberal rule under which the employee need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is said to have been with the permission of the named insured, though the particular use at the time of the accident may not have been within the contemplation of the named insured when he parted with the possession of the vehicle. See Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368; Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500; Drewek v. Milwaukee Automobile Insurance Co., 207 Wis. 445, 240 N.W. 881; Konrad v. Hartford Accident & Indemnity Co., 11 Ill.App.2d 503, 137 N.E.2d 855.

"Under the second rule, known as the strict or conversion rule, for the use of the vehicle to be within the omnibus clause the permission given to the employee must extend, not only to the initial use of the vehicle, but also to the particular use being made of the car at the time of the accident. Johnson v. American Automobile Ins. Co., 131 Me. 288, 161 A. 496; Gray v. Sawatzki, 291 Mich. 491, 289 N.W. 227; Travelers Ins. Co. v. Marcoux, 91 N.H. 450, 21 A.2d 161.

"The third and final rule is called the moderate or minor deviation rule. Under this rule a minor deviation from the purpose for which the employer granted the employee permission to use the vehicle will not be

sufficient to exclude the employee from coverage under the omnibus clause, while a material deviation is held to constitute a use of the automobile without the employer's permission. Kazdan v. Stein, 26 Ohio App. 455, 160 N.E. 506, affirmed 118 Ohio St. 217, 160 N.E. 704; Hodges v. Ocean Accident & Guarantee Corp., 66 Ga.App. 431, 18 S.E.2d 28, certiorari denied 316 U.S. 693, 62 S.Ct. 1299, 86 L.Ed. 1763, rehearing denied 317 U.S. 705, 63 S.Ct. 25, 87 L.Ed. 563; United States Fidelity & Guaranty Co. v. Hall, 237 Ky. 393, 35 S.W.2d 550; Brower v. Employers' Liability Assurance Co., 318 Pa. 440, 177 A. 826."

Defendants contend that broad interpretation must be given to the omnibus clause of the policy, which is the usual provision to be found in most liability policies, and that there must be read into it the provisions of the Motor Vehicle Safety Responsibility Law of Missouri, § 303.170 V.A.M.S. That law, however, does not require more than is written into this policy, which provides among other things:

> "The policy shall provide financial responsibility and shall insure any other person using such motor vehicle with the express or implied permission of such named insured."

In the case of Speidel v. Kellum, 340 S.W.2d 200, Judge Broaddus, speaking for the Court of Appeals, had this to say after quoting the three rules of construction:

> "We are of the opinion it should be the third, the moderate or minor diversion rule. Our courts have taken a firm position in cases arising under the *respondeat superior* doctrine where employees have deviated from the scope and course of their employment. As said in the case of Rainwater v. Wallace, Mo.App., 169 S.W.2d 450, 456, affirmed 351 Mo. 1044, 174 S.W.2d 835:
>
> " 'It is the well established rule in this state, that a servant does not step without the scope of his employment, as a matter of law, by joining some private business of his own with that of his master's except where he makes a marked deviation from his master's business.' "

■ Thus it appears that the moderate or minor deviation rule is the law in Missouri.

Defendants cite to the court the case of New York Casualty Co. v. Lewellen, 8 Cir., 184 F.2d 891, a case tried in this court. There it was a question of deviation and delay in time. The employee had the authority to drive the truck from his place of work to his home and return. There was a slight deviation and the court held the insurer liable.

The only case cited to the court where there was anywhere near a similar set of circumstances was in Winterton v. Van Zandt, Mo., 351 S.W.2d 696. In a determination of the question of the company's liability there, the court placed a construction upon the factual situation entirely different from the case at hand.

In that case there was a social relationship existing between the owner and the operator of the motor vehicle at the time of the collision; they had some sort of common project in mind at the time, and the court clearly distinguished that case and the case where the limitation of right to use was placed upon the operator of the car. In the opinion of this court, the facts in that case are not applicable here.

Since the moderate or minor deviation rule is applicable in Missouri, a review of the facts indicate that permission was not granted in the case at hand.

■ On the day of the accident Noel had no knowledge that Morris was taking the automobile into Oregon. Morris was under instructions to take the car to and from work and "that was all". Oregon was nowhere near work as it was several miles in the opposite direction from the home of both Noel and Morris. Clearly this was not only a deviation as to place, but also as to time and it was a clear

violation of the authority granted by Noel to Morris for the use of the car.

Therefore, under the law of Missouri, and under the facts of this case, it is this court's conclusion that neither Morris nor Moser drove the automobile in question with the permission of the insured and thus were not additional insured under the terms of the policy.

The evidence reveals that Morris, Moser and Kelly were in Oregon early in the evening of the 14th, as heretofore stated, probably engaging in some drinking. The City Marshal of Oregon observed the said defendants and told Morris that if he found him in the car operating it, he would arrest him. Moser in the presence of Morris, stated that Morris was not driving the car, that he had the keys, he exhibited them to the Marshal, and said that he was operating the car.

After the collision and while the parties were in the hospital, a highway patrolman had a conversation with Moser and Kelly, in which it was stated that he did not know whether he was driving the car or not, that he didn't remember, but in his presence at that time, Kelly stated to the highway patrolman that Moser was operating the car.

After the collision the position of the bodies on the highway were as follows: Kelly first, Morris second and Moser the last. The door on the driver's side having been wedged securely so that it could not open, all of the parties apparently were thrown out on the right side of the car. There is at least an inference to be drawn from this that the parties may have been knocked out of the car in the order in which they were seated in the front seat.

Kelly was a resident of the State of Georgia, and seemingly has no interest in the case. In his deposition, which was introduced in evidence, he was positive in identifying Moser as the driver of the car at the time of the collision. It should be noted that on direct examination in the trial of this case, Moser stated that Morris was driving the car. On cross examination he admitted he had made the statement that he didn't remember, and that, in fact, he did not remember at that time who was driving the car. He was a very unsatisfactory witness, his attitude on the witness stand was not such as to inspire confidence or belief in his statement.

The evidence of Kelly, a disinterested witness, is worthy of greater weight and under the circumstances, is accepted by the court as true. It is the court's finding that Moser was the driver of the car.

As heretofore stated, Noel had no acquaintance with Moser and never heard of him, and certainly could not have given him permission to drive the car. It must be determined that he did not have any authority from Noel to drive the car.

It is stated in 5 A.L.R. 643:

"Naturally, the courts are more rigid in their interpretation of the scope of the term 'permission' in cases where the use of the automobile was delegated to a third person than in those where merely the operation of the car was delegated."

It is further stated:

"It has been held in a number of cases that the permission given by the named assured to his employee to use the insured's automobile does not, by implication, include authority to delegate such permission to a third person, and that, hence, the insured is not liable under the omnibus clause of an automobile insurance policy on account of an accident occurring during the use of the car by such third person."

IT IS THEREFORE my finding and conclusion that neither Morris nor Moser are additional insureds within the meaning of the policy, and that there is no responsibility upon the insurer to defend Moser or the estate of Morris against any action that may be brought against them for damages growing out of the collision or to pay any judgment that

may be obtained against them, or either of them.

Plaintiff also prays that the court find that it is not obligated to defend any claim by defendants against Billy Noel. I am unable to quite understand under any conceivable theory of fact or law, how plaintiff could decline to represent the defendant Noel in any action that might be brought against him, or to pay any judgment that might be rendered against him as a result of such collision.

■ Plaintiff has cited no authority sustaining its contention. The policy specifically obligated the plaintiff to defend the named insured, which is Noel. It must therefore be concluded that plaintiff is obligated to defend Noel in any action that might be brought against him as a result of the accident in question.

It is the universal practice of insurance companies in this jurisdiction to join all possible claimants in declaratory judgment actions to determine their liability under the terms of their liability policies. In this case not only did the insurance company join all persons who may have been entitled to protection under the policy but likewise all of the occupants of the car with which the insured's car came into collision, as well as their parents. Certain of these parties took the leading role in the defense of the case, which was reluctantly permitted by the court.

■ This liability policy and all other policies that have come to my attention, written in Missouri, simply agree to pay on behalf of the insured, all sums which the insured shall become legally obligated to pay. If a judgment is obtained against an insured and it isn't paid, the judgment holder has his remedy by execution and summoning the insurance company as a garnishee.

Until the injured party has obtained a judgment, he has no rights that he can enforce, or, as a matter of fact, I think even protect, although some courts hold that they are necessary parties, and may

be given, and have a right to appear regardless of the fact that they made a claim or expect to make a claim.

Certainly this court has no power to say to these defendants that they may not bring any action against any of these parties; there is no contractual obligation on behalf of the plaintiff to these defendants until a judgment has been obtained; the contract is between the insurer and the insured, and to such others as may be covered by its provisions. If the policy is void in any respect as between those parties, then it is void as to all parties. If there is no obligation on the part of the plaintiff to defend or pay a judgment rendered against any of the parties, then the injured parties or claimants have no rights against the insurer.

■ Under these circumstances, it is my conclusion that there is no justiciable controversy existing between the plaintiff and the defendants Rex Allen Young, Allen Young and Geraldine Young, Norman Crouse, Ronald Crouse, Norman Crouse, Sr., and Edna Crouse, Carolyn Martin, Viola Martin, Mary Ann Ramsey, William Ramsey and Doris Ramsey, Peggy Kreek, John Kreek and Sadie Kreek, and Kenneth Kelly, and the cause of action is dismissed as to them. Western Casualty & Surety Co. v. Beverforden, 8 Cir., 93 F.2d 166.

It is my conclusion that under the terms of the policy, it is the duty and responsibility of the plaintiff to defend the insured Noel against any action that may be brought against him by any of the parties growing out of the collision, and to pay any judgment which may be rendered against him.

It is further my conclusion that at the time of the collision, neither Moser nor Morris was operating the motor vehicle with the consent of the insured, and that they are not, under the terms of the policy, additional insured persons, and that there is no legal responsibility upon the plaintiff to defend any action brought against them or to pay any judgment which may be rendered against them,

or either of them, growing out of the operation of said automobile.

Upon the application of the plaintiff, Louis V. Stigall, was appointed guardian ad litem for Rex Allen Young, Norman Crouse, Jr., Ronald Crouse, Carolyn Martin and Peggy Kreek, defendants herein, who appeared and filed Answer and represented said defendants at the trial of said cause, and he is allowed the sum of $200.00 as costs to be paid by the plaintiff.