KELLOGG COMPANY, Plaintiff,

v.

The AETNA CASUALTY & SURETY COMPANY et al., Defendants.

No. 67–44–Civ.

United States District Court
S. D. Florida,
Miami Division.

March 12, 1968.
Judgment April 10, 1968.

Carey A. Randall, of Walton, Lantaff, Schroeder, Carson & Wahl, Miami, Fla., for plaintiff.

Willis H. Flick, of Blackwell, Walker & Gray, Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER

FULTON, Chief Judge.

On January 12, 1967, the Kellogg Company, a corporation organized and exist-

ing under the laws of the State of Michigan with its principal place of business in Battle Creek, Michigan (hereinafter referred to as Kellogg or the Plaintiff) brought an action in this Court against the Aetna Casualty & Surety Company and some thirty-nine other insurance companies, which constitute and are known as the United States Aircraft Insurance Group (hereinafter referred to as USAIG or the Defendants).

USAIG executed and delivered to Kellogg an all risk hull coverage and liability coverage policy, which, among other things, provided as follows:

III. *Hull Coverages*

To insure against:

Coverage H: all risks of physical loss of or damage to the aircraft

I. *Liability Coverages*

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

Coverage D: Injury sustained by any person and injury to property, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.

*"Insured"* means the named Insured and, with respect only to the Liability Coverages, also means any person while using or riding in the aircraft and any person or organization legally responsible for the use thereof, provided the actual use of the aircraft is by the named Insured or with his permission; * * *

*"Named Insured"* means the individual, partnership, corporation or other entity whose name is stated in Item I of the Declarations.

*"Occurrence"* means an accident, or a continuous or repeated exposure to conditions, which results in injury during the policy period, provided the injury is unexpectedly caused. All damages arising out of such exposure to substantially the same general conditions shall be deemed to arise out of one occurrence.

*"Injury"*, as respects any person, means bodily injury, sickness or disease, including mental anguish or death resulting therefrom; * * *

6. *Defense, Settlement and Supplementary Payments. (Liability Coverages)*

With respect to the insurance afforded under the liability coverages, the Company shall:

(a) defend any suit against the Insured alleging such injury to person or property and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation or settlement of any claim or suit as it deems expedient;

and the amounts so incurred, except for settlements of claims and suits, are payable by the Company in addition to the applicable limit of liability.

In addition to the foregoing, said policy of insurance provided as follows:

IV. *Policy Period and Territory*

This policy applies only to occurrences, accidents or losses which happen during the policy period while the aircraft is within the United States of America, its territories or possessions, Canada or Mexico, or enroute between points within these places.

*Exclusions*

None of the coverages applies:

(b) While the aircraft is * * * (2) operated, while in flight, by other than the pilot or pilots as stated in the Declarations.

*Declarations*

5. *Pilots.* This policy shall not apply to an aircraft while in flight unless operated by the following pilot(s):

(1) A. C. Ackerman, Commercial Pilot, holding an Airline Transport Rating acting in the capacity of pilot in command when accompanied by any pilot holding a Commercial F.A.A. Certificate with a Multi-Engine Rating acting in the capacity

of co-pilot. (2) A pilot holding a Commercial Pilot Certificate with a minimum of 2500 Command Flight Hours, of which 500 have been command hours in multi-engine aircraft and type rating in the Hawker-Siddeley DH–125 aircraft who are approved by A. C. Ackerman while accompanied by any pilot holding a Commercial F.A.A. Certificate with a Multi-Engine Rating acting in the capacity of co-pilot. (Endorsement #10, dated 9/28/66)

Item 4 of the Declarations, as supplemented by endorsement dated June 28, 1966, designates the airplane described as a 1966 Hawker-Siddeley DH–125 bearing F.A.A. Identification No. N–235KC. It is conceded that this airplane fell into the waters of the Atlantic Ocean three and one-half to six miles west of Freeport, Bahamas, on November 21, 1966. As a result of this crash, the airplane and its sole passenger, one Marcia Donnelly, were lost at sea. However, its pilot, Mr. Ackerman, who was then Kellogg's Chief Pilot and in charge of its aviation department, survived, although he was badly hurt. At the time of the crash, the airplane was beyond the territorial limits of the policy and was then and there being flown without a co-pilot.

In Counts I and II of Kellogg's Complaint, it seeks to recover the value of the aircraft, plus interest, attorneys fees and costs. In Count III of its Complaint, Kellogg prays as follows:

* * * that this Court enter a declaratory judgment, declaring that the defendants are under the duty or obligation to appear and defend any suits brought on behalf of third parties against the plaintiff, arising out of the loss of said aircraft and that this Court further declare that the cost of such defense and payment of any sums which the plaintiff may become obligated to pay as damages was covered by the plaintiff's policy and for such other and further relief as to the Court seems just.

Some months after Kellogg instituted the instant action, the husband of the passenger, Michael Roger Donnelly, as Administrator of his deceased wife's estate, instituted an action in this Court against Kellogg and others in which he seeks damages caused by the wrongful death of his wife. This Court denied a motion to consolidate the two cases for trial.

Counsel in the instant case, with the approval of the Court, agreed that Counts I and II hereof should be tried to a jury and that the Court would reserve unto itself for decision the relief sought in Count III; but that the decision upon each of the three counts would be predicated upon the evidence adduced at the trial to the jury of Counts I and II.

Kellogg's claims as set forth in Counts I and II of the Complaint, wherein it seeks the value of the lost aircraft plus interest, attorneys fees and costs, were tried to a jury during the week beginning February 12, 1968. As the trial progressed, there was a conference between counsel and the Court wherein there was a discussion as to what issue or issues would be submitted to the jury for its determination. During this conference the Court suggested, and counsel agreed, the relationship between Kellogg and Mr. Ackerman, its chief pilot, was that of an employer and employee. At this conference, the Court suggested, with the apparent tacit approval of both sides, that the basic underlying issue of fact for determination by the jury was whether Mr. Ackerman did or did not have authority to do what he did with respect to the flight in question, which of course included the issue of whether, in his capacity as head of Kellogg's aviation department and chief pilot, and in view of all of the other facts and circumstances which were developed by the evidence, Mr. Ackerman was authorized to fly said airplane without a co-pilot and beyond the territorial limits of the protection provided by the policy.

During the charge conference which was conducted at the close of all of the evidence, counsel for the parties were advised by the Court that the Court in-

tended to instruct the jury that the basic underlying fact issue in the case was whether Mr. Ackerman, as an employee of Kellogg, did or did not have authority to do what he did at the time and place in question. At the close of the trial, this charge was given, with what appeared to the Court to be the approval of counsel. Shortly thereafter, the jury returned a verdict for Kellogg for the stipulated value of the airplane, $960,000, and in view of the charge which was given, implicit in that verdict was a finding by the jury that Mr. Ackerman did not have authority to do what he did with respect to the flight in question.

## DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND ALTERNATIVE MOTION FOR A NEW TRIAL

Defendants' Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial is in large measure directed at the Court's instructions to the jury. As stated above, the Court was then and is now of the opinion that the jury charge given was agreeable to counsel, except that both sides routinely objected to the Court's failure to give requested charges. Stated differently, there was then an accord between counsel approving the jury charge as given.

In addition, counsel for the defense strongly urge that the Court erred in failing to direct a verdict for the defendants at the close of the plaintiff's case and at the close of all of the evidence. The Court was then and is now of the opinion that said motion should be denied.

At a bench conference immediately prior to final arguments, counsel for the defense moved the Court for an order enjoining counsel for the plaintiff from discussing with the jury the failure of the defense to call as a witness the pilot, Mr. Ackerman. This ore tenus motion, which was very privately made at the bench and probably not recorded by the reporter, was denied for a variety of reasons, one of which was the fact that

in his opening statement, counsel for the defense indicated that he was going to call Mr. Ackerman, who would testify to certain facts.

■ Accordingly, both the defendants' Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial should be denied.

## ATTORNEYS' FEES

■ The Court considers an allowance for attorneys' fees for services rendered by plaintiff's counsel in connection with this case to be proper and appropriate, pursuant to Section 627.0127, Florida Statutes. Said statute is procedural, and applies to suits in Florida courts, including Federal courts sitting in Florida, on insurance contracts made anywhere. This right to reimbursement is not inherent in the insurance contract, but is an incident of a Florida suit on an insurance contract made anywhere. American Fidelity & Casualty Co. v. Greyhound Corporation, 258 F.2d 709 (5 Cir. 1958); Fidelity-Phenix Fire Insurance Co. of New York v. Cortez Cigar Co., 92 F.2d 882 (5 Cir. 1937); Slate v. Berkshire Life Insurance Co., 142 F.Supp. 691 (S.D.Fla. 1956); Feller v. Equitable Life Assurance Society of United States, 57 So.2d 581 (Fla.1952).

Plaintiff's counsel testified, and the Court finds that the law firm of Walton, Lantaff, Schroeder, Carson & Wahl spent approximately 902 hours in investigation, research, pre-trial preparation, and trial of this case. The 902 hours do not include services rendered in connection with the post-trial motions heard on March 4, 1968. Plaintiff's counsel testified that when his firm performed legal services for insurance companies at an hourly rate, the rate varied from $30 to $60 per hour for pre-trial preparation, and $250 to $300 per day for trial time. He testified that although at first blush the fact pattern of this case would suggest the existence of judicial precedents, none squarely on point were found by counsel for either side or by the Court. Because of the complexity of the legal

and factual issues involved in this case, extensive legal research, as well as intensive investigation, was necessary and done.

There are other facts which were adduced at the recent hearing on post-trial motions and which are being taken into consideration in fixing the amount of this allowance. Counsel for Kellogg does not represent Kellogg on a regular basis; but rather, in counsel's own words, "this was a one-shot deal." Moreover, counsel for Kellogg has, from time to time, represented at least seven of the insurance companies which are defendants herein, and counsel is mindful that their position in this lawsuit may well affect their relationship with these insurers. Based upon all of these factors, plaintiff's counsel testified that in his judgment, a reasonable fee for their services rendered in this case would be between $200,000 and $250,000.

In addition to hearing the above-mentioned testimony of plaintiff's counsel, the Court heard testimony of other attorneys who practice in Dade County concerning the amount of a reasonable fee for services rendered by counsel for plaintiff herein, and received into evidence the minimum fee schedule prepared by the Dade County Bar Association. The Dade County Bar Association minimum fee schedule suggests a fee of $20,350. An attorney-witness for the defendants testified that in his opinion a fair fee for the services rendered by plaintiff's counsel in this cause would be $50,000. Two attorney-witnesses for plaintiff testified that in their opinion a reasonable fee for said services would be a minimum of $175,000 and a maximum of $250,000.

## INTEREST

Plaintiff contends that it is entitled to interest on its recovery at the rate of six percent per annum from December 6, 1966, on the grounds that the Federal Court sitting in Florida should apply Florida's interest rate where no rate is specified in the policy. Defendants do not dispute that plaintiff is entitled to interest on its recovery from December 6, 1966, but contends that said interest should be at the rate of five percent, as provided by Michigan and Illinois statutes.

■ A Federal court sitting in diversity must apply the forum state's conflict of law rules to determine whether the forum would apply its own law or that of some other state in fixing the rate of interest to be applied. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, this Court must look to Florida conflict of law rules to determine whether Florida would apply its own law regarding interest rates, or that of some other state. Counsel have not cited, and the Court has been unable to find, any Florida state court case setting forth a Florida conflicts rule. However, several other sources indicate what a Florida court would do, if confronted with the problem.

In a case concerning a maritime salvage contract which originated in a District Court sitting in Florida, the Court of Appeals for the Fifth Circuit held that the salvor was entitled to the interest on its recovery at the legal rate in Florida where the contract was made. The Leonie O. Louise, 4 F.2d 699 (5 Cir. 1925).

Section 418 of the Restatement, Conflict of Laws, states that:

> The rate of interest allowed as part of the damages for breach of a contract is determined by the law of the place of performance.

In the Florida annotations to the Restatement, The Leonie O. Louise, supra, is cited for the proposition that Florida's position is, "Where the rate of interest is not expressed in a contract the legal rate prevailing at the place of payment governs."

This rule was reiterated more recently in Fahs v. Martin, 224 F.2d 387 (5 Cir. 1955), another case which originated from a District Court sitting in Florida. See also Thorp v. American Avia-

tion & General Insurance Co., 212 F.2d 821 (3 Cir. 1964).

■ Where the policy does not expressly provide the place of performance, two indicia of the place of performance are:

1. Where the loss is to be adjusted and paid,

2. Where premiums are to be paid.

12 Appleman, Insurance Law & Practice, Section 7095. It is not disputed that this policy was issued by defendants in Illinois in favor of the plaintiff, whose principal place of business is in Michigan. See Declarations to the policy, which is plaintiff's Exhibit No. 1. Therefore, premiums thereunder would be sent by the plaintiff from Michigan to defendants in Illinois. Any payment on a loss pursuant to the policy would be sent from defendants in Illinois to plaintiff in Michigan. Thus the place of performance of this policy would be either Illinois or Michigan, both of which provide for interest at the rate of five percent per annum. See Smith-Hurd Illinois Annotated Statutes, Chapter 64, Section 2; 14 Michigan Statutes Annotated, Section 19.11, C.L.1948, § 438.51.

## DECLARATORY RELIEF
## COUNT III

In Count III of its complaint, Kellogg prays for the following relief:

\* \* \* that this Court enter a declaratory judgment, declaring that the defendants are under the duty or obligation to appear and defend any suits brought on behalf of third parties against the plaintiff, arising out of the loss of said aircraft and that this Court further declare that the cost of such defense and payment of any sums which the plaintiff may become obligated to pay as damages was covered by the plaintiff's policy and for such other and further relief as to the Court seems just.

Before and during the trial of this cause, the following facts were stipulated by and between counsel for the parties:

1. On June 10, 1965, defendants issued a policy of aircraft insurance in favor of the plaintiff, Kellogg Company, which policy was in force and effect on November 21, 1966.

2. Said policy of aircraft insurance contained the provisions set forth at the beginning of this Memorandum Opinion.

3. On November 21, 1966, Albert Acerman, as pilot of Kellogg's Hawker-Siddeley jet plane, took it on a flight, leaving Miami International Airport at 7:52 P.M.

4. The flight ended with the crash of the plane in the Atlantic Ocean about three and one-half to six nautical miles west of Freeport, Bahamas, on November 21, 1966.

5. This airplane was the airplane which is described in Item 4 of the Policy Declarations, as supplemented by Endorsement No. 5 to said policy. See Plaintiff's Exhibit No. 1.

6. Mr. Ackerman was the only pilot on board the plane during said flight —there was no co-pilot on board with him. At the time of the crash, there was a female passenger on board the plane.

7. On this flight, Mr. Ackerman operated the airplane beyond the territorial limits permitted by the policy.

8. As of November 21, 1966, plaintiff was current on all premiums due and owing on the policy of insurance.

9. Plaintiff duly notified the defendants concerning the crash and loss of the airplane in the manner and form required by the policy.

10. Plaintiff has complied with all other conditions precedent which are required by the insurance contract.

11. On December 6, 1966, defendants denied coverage under the policy.

12. On October 30, 1967, Michael Roger Donnelly, as Administrator of the Estate of Marcia Donnelly, deceased, filed suit against the Kellogg Company and others, in which

he seeks damages for the wrongful death of Marcia Donnelly, his wife. Said complaint alleges that Mrs. Donnelly's death occurred on November 21, 1966 when she was a passenger on board the Kellogg jet with Mr. Ackerman.

As the inimitable Erie scrivener, Judge John R. Brown, wrote in Green v. Aetna Insurance Company, 349 F.2d 919 (5 Cir. 1965),

> [The Court is] Erie-[Illinois] bound both as to the substantive construction of the policy contract and as to the substantive nature of the test to determine whether the damage claim comes within the coverage thus construed. Unlike some where the lights are dim, * * * or where the wick sputters from doubtful fuel, * * * the lights here are bright, clear and contemporary. Ibid, at page 922.

■ Illinois, like most courts, holds that an insurer is obligated to defend an action brought against its insured where the complaint in that action alleges a state of facts within the coverage of the policy, irrespective of the ultimate liability of the insured. McFayden v. North River Insurance Co., 62 Ill.App. 2d 164, 209 N.E.2d 833 (1965), 7A Appleman, Insurance Law & Practice, Sections 4682 et seq.

■ In his complaint for the wrongful death of his wife, Mr. Donnelly seeks damages from Kellogg on the grounds that Kellogg negligently entrusted the airplane to Mr. Ackerman, and negligently committed the custody or use or control of the airplane to Mr. Ackerman, which proximately caused the fateful crash and Mrs. Donnelly's death. This claim is for damages "caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft," within the meaning of Coverage D of this policy of liability insurance.

Therefore the defendants are obligated to defend Kellogg in the said wrongful death action. See Travelers Indemnity Co. v. State Farm Mutual Automobile Insurance Co., 330 F.2d 250 (9 Cir. 1964); American Fidelity and Casualty Co., Inc. v. Pennsylvania Threshermen and F. M. Cas. Ins. Co., 280 F.2d 453 (5 Cir. 1960); Farmers Mutual Automobile Insurance Co. v. Noel, 211 F.Supp. 216 (W.D.Mo.1962); Allstate Insurance Co. v. Gleason, 50 Ill.App.2d 207, 200 N.E.2d 383 (1964).

■ The issue of the liability of the defendants to pay any sum which Kellogg may become obligated to pay to Donnelly on the wrongful death claim is now premature. Green v. Aetna Insurance Co., supra; Allstate Insurance Co. v. Gleason, supra. Hence no declaration will now be made concerning said issue.

## ORDER

The Court having jurisdiction over the parties to and the subject matter of this cause, and the cause having been tried to a jury as above stated, the Court thereupon enters the following Order:

1. Defendants' Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial be and the same are hereby denied.

2. Interest is hereby awarded to the plaintiff at the rate of five percent (5%) per annum on the sum of $960,000, with the interest computed from December 6, 1966.

3. Plaintiff is hereby allowed a fee for plaintiff's attorneys for services rendered herein in the sum of $87,500, which sum is hereby determined to be fair and just compensation for services rendered herein.

4. Pursuant to the said policy of insurance, the defendants are legally obligated to defend Kellogg in connection with the wrongful death action which has been brought by Michael Roger Donnelly, as Administrator of the Estate of Marcia Donnelly. See Travelers Indemnity Co. v. State Farm Mutual Automobile Insurance Co., supra; American Fidelity and Casualty Co., Inc. v. Pennsylvania Threshermen and F. M. Cas. Ins. Co., supra; Farmers Mutual Automobile Insurance Co. v. Noel, supra; Allstate

Insurance Co. v. Gleason, supra; McFayden v. North River Insurance Co., supra.

5. The question of the liability of the defendants, if any, to pay such sum as Kellogg may become liable to pay to Michael Roger Donnelly, as Administrator of the Estate of Marcia Donnelly, deceased, upon the wrongful death action is now premature. Hence no declaration will be made herein with respect to this issue.

6. This Memorandum Opinion shall serve as the Court's findings of fact and conclusions of law with respect to Count III of the complaint. Judgment shall be submitted in conformity with this Memorandum Opinion.

## JUDGMENT

So much of this cause as sought a recovery of damages was tried to a jury which returned a verdict in favor of the Plaintiff and against the Defendants in the principal sum of $960,000. Thereafter, the Court entered a Memorandum Opinion wherein it dealt with so much of the controversy as pertained to interest and attorneys' fees, and which Memorandum Opinion resolved the issues pertaining to Plaintiff's prayer for declaratory relief. Thereupon, it is

Ordered and adjudged as follows:

1. That the Plaintiff do recover of and from the Defendants, jointly and severally, the following amounts:

The principal sum of $960,000;

Interest in the sum of $64,569.45, which interest has been computed at the rate of five percent (5%) per annum on said principal sum from December 6, 1966 until the date hereof;

The sum of $87,500, as and for fees for Plaintiff's Attorneys;

Plaintiff's costs expended in this cause, as hereinafter fixed and taxed by the Clerk of this Court;

for which said sums let execution issue.

2. That the Defendants are legally obligated to defend the Plaintiff in that certain action pending in this Court, captioned as follows:

MICHAEL ROGER DONNELLY, Administrator of the Estate of MARCIA DONNELLY, deceased,
Plaintiff,

v.

THE KELLOGG COMPANY, a Delaware corporation; ALBERT ACKERMAN; PROPELLER SERVICE OF MIAMI, INC., a Delaware corporation and CITIES SERVICE OIL COMPANY, a Delaware corporation,
Defendants.

Case No. 67-1104-Civ-CF

———◆———

All other declaratory relief herein sought by the Plaintiff is hereby denied, without prejudice.